UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHERYL CURTI,<br>    Plaintiff<br><br>v.<br><br>CITY OF EAST PROVIDENCE, by<br>and through its finance director,<br>MALCOLM MOORE,<br>    Defendant | :<br>:<br>:<br>:    C.A. No.:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

### I. Introductory Statement

This is an action brought by the Plaintiff seeking declaratory relief and attorney's fees and litigation expenses as well as compensatory and punitive damages to redress unlawful conduct committed by the Defendant against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*, the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I.G.L. §42-112-1, *et seq.*, and the Fair Employment Practices Act ("FEPA"), R.I.G.L. §28-5-1, *et seq.*

### II. Parties

1. The Plaintiff, Cheryl Curti, is a resident of the City of Pawtucket, County of Providence, State of Rhode Island.

2. Defendant City of East Providence ("City") is a is a duly authorized and organized municipality pursuant to the laws of the State of Rhode Island and is sued by and through its finance director, Malcolm Moore, the official designated by the state law, R.I.G.L. §45-15-5, to be named in a suit for relief against the City.

### III. Jurisdiction

3. This Court has jurisdiction over the Plaintiff's claim under Title VII pursuant to 42 U.S.C. §2000e-5(f)(3) and supplemental jurisdiction over the Plaintiff's claim under the RICRA and the FEPA pursuant to 28 U.S.C. §1367.

### IV. Venue

4. Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

### V. Exhaustion of Administrative Remedies

5. On or about October 26, 2020, the Plaintiff timely filed a charge of discrimination against Defendant City with the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 21 ESE 071-05/03, and the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16J-2021-00030.

6. On or about March 7, 2022, Defendant City notified the RICHR that it wanted to terminate the administrative proceedings before the RICHR pursuant to R.I.G.L. §28-5-24.1

7. On March 9, 2022, the Plaintiff was issued a notice of right to sue by the RICHR and has timely instituted suit thereon.

8. On or about April 27, 2022, the Plaintiff was issued a notice of right to sue by the EEOC and has timely instituted suit thereon.

9. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

### VI. Material Facts

10. The Plaintiff is a female.

11. In or about February 2019, the Plaintiff was hired as a Library Aid at Weaver Library by Defendant City.

12. In 2002, the Plaintiff was transferred to Defendant City's Clerk's Office.

13. In March 2014, the Plaintiff was promoted to Confidential Secretary for the Police at Defendant City's Police Department ("Department").

14. During her employment at Defendant City, the Plaintiff's work performance was satisfactory and met Defendant City's legitimate expectations.

15. During Plaintiff's employment, Respondent City employees and/or agents, including but not limited to, William Nebus, Chief of Police at Defendant City, subjected the Plaintiff to discriminatory conduct based on her sex.

16. For example, Chief Nebus often commented that Christopher Parella, the former Police Chief at Defendant City, was the Plaintiff's "boyfriend" and that she was "in love" with Mr. Parella.

17. In addition, Chief Nebus often commented that Mr. Parella and the Plaintiff had sexual intercourse on the conference room table at Defendant City's Department.

18. On one occasion, the Plaintiff provided Chief Nebus a handwritten note, which he crumpled up and threw at the Plaintiff's head in front of the command staff.

19. On or about February 28, 2017, the Plaintiff attended a Defendant City employee's retirement party. During this party, Chief Nebus, in front of all the party guests, served the Plaintiff with a fake "no contact order," which described him as the victim and stated that the Plaintiff could no longer "harass, interfere with, molest, or threaten" him.

20. On or about June 5, 2017, Chief Nebus gave the Plaintiff a fake "resignation" notice, which described the Plaintiff as a "non-confidential secretary." In addition, Chief Nebus wrote "Please insert days the chief will be in Italy," in reference to Mr. Parella.

21. On January 30, 2018, Chief Nebus opened interoffice mail that was addressed to the Plaintiff.

22. On January 31, 2019, Chief Nebus yelled at the Plaintiff to draft a thank you letter for an upcoming meeting he had scheduled. However, the Plaintiff was unaware of the meeting or the details surrounding the thank you letter. Chief Nebus also asked Plaintiff if she "could be a secretary enough to type an envelope."

23. On February 7, 2018, the Plaintiff was subjected to a verbal attack by Chief Nebus. Sergeant Atwell witnessed the attack.

24. On April 10, 2018, Chief Nebus opened interoffice mail that was addressed to the Plaintiff.

25. On February 19, 2019, Chief Nebus was officially promoted from Deputy Chief of Police to Acting Chief of Police.

26. During Mr. Parella's tenure as Police Chief, he had the Plaintiff lock the office doors when no one was in the office to protect confidential information. As a result, it became a habit of the Plaintiff to lock the office doors. However, Chief Nebus would scold the Plaintiff every time the Plaintiff locked the office doors when he did not have his keys with him.

27. Chief Nebus also required the Plaintiff to perform tasks that were not a part of her job description. For example, the Plaintiff was accountable for payroll tracking even though there were two (2) clerks that were responsible for payroll. The Plaintiff was also responsible for record

destruction, tracking overtime, and compiling reports with all sick, personal, and vacation time. In addition, Chief Nebus required the Plaintiff to research and apply for federal grants.

28. On April 23, 2019, Lisa Antonaccio, Administrative Officer at the Rhode Island Division of Motor Vehicles, sent the Plaintiff an e-mail regarding a confidential plate review. The Plaintiff forwarded Ms. Antonaccio's e-mail to Chief Nebus and wrote, "Time sensitive… ."

29. In response to the Plaintiff's e-mail, Chief Nebus wrote, "I'd say! Since February?? That's unacceptable. Hopefully you apologized for the delay." However, the letter and certification affidavit attached in Ms. Antonaccio's e-mail was originally sent via mail and addressed to Mr. Parella as "confidential." As a result, the Plaintiff provided Mr. Parella with the envelope and heard nothing more about the details of the enclosed documents.

30. On one occasion, the Plaintiff attended an afterwork party. During this party, Chief Nebus put his arm around the Plaintiff and kissed her on the cheek. Chief Nebus then said, "See what a few drinks will do for you."

31. On one occasion, the Plaintiff met Lisa Perry and Silvio Napolitano, union representatives at Defendant City. During this meeting, the Plaintiff informed Ms. Perry and Mr. Napolitano about Chief Nebus' aforementioned discriminatory conduct. In response, the union advised the Plaintiff to go out on stress leave.

32. In June, 2019, the Plaintiff met with the Solicitor and Director of Human Resources at Defendant City. During this meeting, the Plaintiff reported Chief Nebus' aforementioned discriminatory conduct. In response, the Plaintiff was told the her claims would be investigated.

33. In July, 2019, the Plaintiff met with Victor Santos, Director of Human Resources at Defendant City, and Andrea Pascoa, a Human Resource Analyst at Defendant City. During this meeting, the Plaintiff reported Chief Nebus' aforementioned discriminatory conduct.

34. Shortly thereafter, the Plaintiff was referred to Elmer Pina, Affirmative Action Officer at Defendant City.

35. In August, 2019, the Plaintiff commenced a leave of absence.

36. On September 5, 2019, the Plaintiff had cervical surgery.

37. On October 1, 2019, the Plaintiff underwent a procedure on her spinal cord.

38. During the Plaintiff's medical leave, Chief Nebus texted her regarding work-related questions and asked the Plaintiff to attend a mandatory training when the Plaintiff could barely walk; however, two (2) clerks in payroll were not required to attend the mandatory meeting.

39. In or about November, 2019, the Plaintiff returned to work from her medical leave of absence.

40. On April 9, 2020, the Plaintiff had a counseling session with Chief Nebus. During this session, Chief Nebus stood in front of the Plaintiff's desk and reprimanded her. The Plaintiff subsequently refused to sign the East Providence Police Department Supervisory Incident Review Report because she believed that Chief Nebus did not properly state the facts of their encounter and/or what was discussed during the counseling session.

41. On February 25, 2020, the Plaintiff sent an e-mail to Mr. Pina regarding Chief Nebus' discriminatory conduct.

42. In response to the Plaintiff's e-mail, Mr. Pina wrote, "Hi Cheryl – I will follow-up with the Mayor's office to see where we are at from our last discussion."

43. Mr. Pina failed and/or refused to follow-up with the Mayor's office regarding the Plaintiff's complaint about Chief Nebus' discriminatory conduct.

44. On July 1, 2020, the Plaintiff was placed on a performance improvement plan at Defendant City.

45. The facts of this matter clearly establish that Defendant City discriminated against the Plaintiff on account of her gender and retaliated against her for complaining about her discriminatory work environment in violation of Title VII, the RICRA, and the FEPA.

46. Defendant's actions and/or omissions are in violation of Title VII, the RICRA, and the FEPA and were motivated by malice and ill will toward the Plaintiff, and Defendant's actions were intentional, willful, malicious and taken with reckless and callous indifference to the statutorily protected rights of the Plaintiff.

47. As a proximate result of Defendant City's unlawful acts and/or omissions, including, but not limited to, those described herein, the Plaintiff has been forced to work in an employment that deprives her of the right to work in a non-discriminatory work environment, as well as, mental and physical anguish, pain and suffering, and loss of enjoyment of life.

## VII. Claims for Relief

48. The Plaintiff incorporates in the counts below the allegations contained in paragraphs 1-47 above.

### Count One
### Unlawful Discrimination—42 U.S.C. §2000e, *et seq.*

49. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of her gender and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Title VII.

### Count Two
### Unlawful Discrimination—R.I.G.L. §42-112-1, *et seq.*

50. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of her gender as well as retaliation causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the RICRA.

**Count Three**
**Unlawful Discrimination—R.I.G.L. §28-5-1, *et seq.***

51. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of her gender and retaliation in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the FEPA.

### VII. Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1. a declaratory judgment that Defendant, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, and the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*;

2. enjoining and permanently restraining Defendant from violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, and the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*;

3. award the Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

4. award the Plaintiff punitive damages;

5. award the Plaintiff liquidated damages pursuant to 29 U.S.C. §216(b);

6. award the Plaintiff reasonable attorney's fees and costs of litigation; and,

7. such other and further relief as the Court deems just and proper.

### IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

### X. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire as trial counsel.

>PLAINTIFF,
>By her attorneys,
>**FORMISANO & COMPANY, P.C.**

Dated: June 6, 2022

>/s/ V. Edward Formisano
>V. Edward Formisano (#5512)
>100 Midway Place, Suite 1
>Cranston, RI 02920-5707
>(401) 944-9691
>(401) 944-9695 (facsimile)
>edf@formisanoandcompany.com

### CERTIFICATION

I hereby certify that on the 6th day of June, 2022, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

>/s/ V. Edward Formisano